May it please the court. My name is Amanda Kipley and I represent the appellant James Dubray. We are asking the court to reverse the district court's ruling on Mr. Dubray's as-applied challenge and remand for the district court to determine whether Mr. Dubray's as-applied challenge can be resolved prior to trial and for further consideration of the as-applied challenge. We also raised a facial challenge in our appeal but given the state of the case law I'll be focusing today on the as-applied challenge. Before I proceed with my planned points I do want to bring to the court's attention that the government notified me late last night that they just learned that Mr. Dubray was placed in escape status on May 5th of 2025. That's the first I learned of that information as well. I checked the BOP website that is what it indicates and so I understand that the government is likely to argue today that Mr. Dubray is no longer able to prosecute his appeal as a result of the fugitive disentanglement doctrine. Given that I became aware of this last night I would respectfully ask for additional time to verify that information with the BOP and also potentially submit additional. Proper subject of a 28-J letter. Yes. Proceed. And just as a note too I think I wrote the last opinion on the on that doctrine and normally what we do is we give a certain period of time for somebody to turn themselves in. We need to know the specifics of that but but there's there's a process that we go through when that happens. Correct, Your Honor. I did review briefly the Emory case which I believe you wrote and there was a order that was issued giving the defendant some period of time to turn themselves in or to show cause and so we would expect it to proceed similarly and I know in that case the defendant through counsel did brief an opposition to dismissal of the appeal and so again very early in knowing this information but we do expect further. To turn to the as applied, to what extent is any challenge foreclosed by the factual basis statement and and the statements that cross from page 1 to page 2? We don't believe that a as applied challenge is foreclosed by the factual basis in this case. As the court knows from Beasley and Cooper, the analysis that the court needs to undertake is to determine whether Mr. DuBray was similar to someone who was mentally ill and dangerous at the time or whether Mr. DuBray was similar to someone who had taken up arms against the people. So looking to those two historical analogs, I imagine the court is focused on some of the additional facts that were in the factual basis such as the fact that there was some flight involved. We would I guess point the court to the fact that there's not much of a factual record outside of the factual basis in this case about whether that flight was at all induced by the defendant's drug use or admitted drug use. Certainly there was admitted drug use in this case in the factual basis statement. I think further factual development of that record would be necessary. Someone could flee for many other reasons. We have individuals who drive at high rates of speed completely sober. What we do know from the pre-sentence report is that Mr. DuBray has impending state charges and so there could be other impetuses for flight as opposed to just being under the influence of drugs. And so when we look to those two historical analogs, I do think it's important that we have to kind of tie ourselves back to whether the drug use did in fact make him mentally ill and dangerous. Well and one of the things that's interesting about this case is this is one of those cases where the non-offense conduct is even more important to the Second Amendment challenge than the offense conduct, at least in my sense, which is to figure out whether he's a credible threat, to figure out whether he acts like he's mentally ill and dangerous, you've got to look at a lot of things that have nothing to do with the underlying offense conduct as well. I mean is that your impression of the case? Well I'm really getting into the grub issue, which is where it's offense conduct and you need to maybe get to the, you maybe need to do it at trial, but this seems like mostly non-offense conduct. It is and I think that's what's problematic potentially with the grub decision or the idea that you always have to go to trial and I know in that argument the appellant's attorney talked about kind of the impossible situation or a possible position that that puts a defendant in because many of those facts as it relates specifically to dangerousness are not facts that would necessarily be relevant to any of the elements of the offense at trial or that should be brought into kind of a trial situation in front of a jury because they would be incredibly prejudicial to a defendant. Well and of course grub was different in that the government was insisting on going to trial and you had mostly offense conduct so that those are some differences between this case and grub. That's correct we do believe that our case is most similar to Baxter and the reason for that is in grub at the outset when the motion to dismiss was filed the government did push back and they did say this decision should be delayed until trial. In this case there is no position by the government on this record either at the stage when the motion to dismiss was briefed or even in the appellee's brief where the government has taken a position about whether that determination should have been delayed until a trial and the district court didn't rule on that matter either. The district court in this case didn't have the benefit of Beasley or Cooper admittedly at the time they were making their decision however they completely declined to address Mr. DuBray's as applied challenge based on the reasoning in Jackson and so now we know with these additional development in the case law of Beasley and Cooper that 922 g3 can sometimes violate an individual's Second Recognizable and so that's one of the reasons we do believe remand is necessary in this case. Another thing that's interesting about this one that actually makes it more like Cooper is Cooper was a stipulated facts trial that makes it procedurally different but Cooper at least as to the how the district court handled it is identical to this case because in Cooper the district court refused to do any analysis based on Jackson and that's my understanding maybe you can correct me if I'm wrong of exactly what the district court judge did in this case now didn't have the benefit of Cooper and Beasley but that's my understanding of what happened. Yes that's correct the district court disposed of this matter in a footnote in their opinion basically pointing to the fact that Jackson had declined to address individual specific as applied challenges that we look at this as a class we now know we do that in the 922 g1 context but not necessarily here in 922 g3 and so I do believe that this is similarly situated to Cooper where the district court did not make a determination because of Jackson. Well did the district court in effect make any findings of fact by the way the district court referred to the factual basis statement? I think that's another problematic element here the district court didn't I don't think found actual facts they had a paragraph called allegations and they were cautious and that was probably in respect to the footnote we put in our own motion where we were trying to be cautious about stipulating the facts ahead of the trial because at that point again the case on this was relatively undeveloped and so the district court didn't find facts and I think in a rule 12 context the case law now says that it would need to do so and with that I'd reserve the remainder of my time. You certainly may. Morning your honors may it please the court I'm Kevin Colliner and also counsel. I want to just speak briefly to this escape issue just to state one thing which is what I have learned since I personally learned of this late last night is that my office was informed of it at the time of the escape I was not I just want to tell the court that so if the court is concerned that there was some breakdown between the marshal service in our office generally we're informed of escapes you know as soon as they happen that did happen here I found out about it last night so that's the reason for the late notice to the court. What makes this case different than these other cases that have come since the district court's order is that we have admissions here in a factual basis statement that this is a daily methamphetamine user and I believe that places this in a different category than those other cases and now I don't know what the drug at issue was in Veasley because I don't think that the opinion talks about the drug itself but I think in all the other cases and I looked up Lofton because the opinion didn't state the drug but all these other cases are marijuana cases and they fit neatly within the analogy Judge Strass that I know I think you first coined about the elderly grandmother who uses marijuana and maybe has a gun next to her bed. I get that marijuana is in this strange kind of limbo in this day and age I'm not here to express an opinion on the medical science behind it but I know it's been legalized in a variety of places I think maybe even where I'm standing now in Minnesota there's some level of legalization. I know the last administration required our office to go through and expunge simple possession cases. So I would agree that methamphetamine is very different than marijuana but without any factual findings by the district court how can this court make any assessment of DuBray's as applied challenge? Well I guess what I'm saying your honor is that I took those cases as they came out in the last couple months to mean that there may be a category that's distinct to marijuana. That's frankly why I wasn't filing 28 J letters on this because it didn't strike me that this case fell within that realm because everyone agrees it's a methamphetamine case and I look at the analogy in Veasley where we talk about a daily PCP user and how that's a drug that I think we can all just agree is a violence inducing drug. I mean that's what we have here. The one problem with that is Veasley Espressoly relies on the history of I think it's called Lodonum and that's a mixture of opiate and wines and so there's at least some history there that suggests there are other drugs other than marijuana that historically have just not been regulated in terms of firearms or otherwise. Yeah and of course we have, it seems like every day a new analog drug comes up that hasn't been controlled and I'm certainly not here to say that marijuana itself can't intoxicate a person to the point where they're dangerous. I mean certainly that is potential. So alcohol obviously can make a person dangerous, especially when mixed with a gun. So it's this odd kind of scenario. I know the court has grappled with these kind of metaphysical questions about what intoxication means with respect to historical analogs and guns. I get where we're at in terms of what is likely to happen in this case because Judge Strass, I know you've written many times that this is a question to be grappled with by the district court and not by this court. I think if there is a case where this court can decide it on this record on first impression de novo, it's this one where we have in terms of the facts in the factual basis, we have that he is a daily methamphetamine user, used the day that he was arrested and that the gun was So doesn't Baxter say we're not supposed to do that? The end of Baxter, isn't that what the end of Baxter is saying? It says, does not state the essential fact of the matter. I don't have to quote people like that. You know, did not lay out the court's findings. They got four or five sentences there. Right. I struggle to determine, you know, I guess the question for me is, is there a scenario in which this court can determine a case like this one without a remand? Let me ask maybe a broader question. Do you think Bruin allows this court to make presumptions about the causal connection between drug use and present dangerousness? With respect to certain drugs, I believe it does. And that is where we're at with methamphetamines. And that's why I think this case is quite different now. Do we have any, just to add to that, do we have any scientific findings or scientific evidence on methamphetamine? Because I'm not sure I completely disagree with you if we were talking about PCP or something where it's pretty obvious. But this one seems a little bit tougher without scientific stuff. I mean, I guess what I would ask is, in the analogy that you've written about, the elder, the grandmother, replaced the word marijuana with meth, right? Now she's a daily meth user with a gun next to her bed. I think that's the sort of thing that, you know, in the words of these analogs, that would cause the society to be concerned, right, about the dangerousness. And do we have scientific findings as to that? We don't in this record, is the direct answer. I do continue to be amazed at the cases I see where someone is a daily meth user and yet they seem to be functioning fairly normally. I don't know how that happens, but they don't seem to be dangerous. Running drug businesses particularly? No question. There are people that seem to be able to continue a meth addiction for a long period of time. So, you know, what do we do with this case? I've made my pitch, I think, the best that I can, that I think that there are facts on this record with the factual basis that this Court can determine this de novo. Now, I get that the Court has... No, we've really got the factual basis, right? Yeah. Okay, go ahead. There's another question about on remand, what do we do with a sworn factual basis statement if a defendant decides to That's, I guess, an issue for the District Court to decide. We have a pre-sentence report that no one objected to. So it seems as though there are some agreements between the, some agreement between the parties as to the basic facts here, but I grant that the pre-sentence report came, you know, after the decision on the motion to dismiss. Where does the burden of proof come in to play here in terms of evidence? I'm not, I mean, the government always has the burden of proof. Yeah, just the government, and so doesn't that impact the burden of proof? In terms of what evidence would be admissible in a hypothetical trial. And if all you have is the offense statement, is that sufficient, I guess? Well, I guess that's the question for the District Court in the first instance in a potential pretrial resolution of this matter, if it's remanded. Well, and that, I was going to ask you about that exact question. I don't mean to steal Judge Grounds' thunder, but this is also, seems like one of these cases that I sort of predicted in Grubb, where the government has had no interest in going to trial with this defendant. You want to reach a plea deal with him, and as part of that, you want to have the Second Amendment claim adjudicated based on the argument you're making, based on the factual basis we have today. I mean, I guess I'm just asking, is that accurate? I mean, would you prefer all else being equal to get this out of the way and not have to go to trial? Well, I mean, you ask a practical question, and so I'll give you a practical answer. We'd much rather try this case than deal with all this, you know, endless appeals and back down to remand and potentially another appeal. This is a day-long trial, maybe. So in terms of our resources, I don't have any qualms about saying that we, you know, we don't indict cases if we don't plan to try them. And so, you know, and I'm not saying that to boast. I'm saying that just in terms of time that it takes to resolve a case. But, of course, it's much easier if on remand you sit down with the defendant and you say, here's the facts we're going to go forward with, and it takes five, you know, five minutes, an hour or whatever in a hearing. Well, I think the more, if I may, the more interesting question is from the other side of the coin. I think that's what you were getting at in the grub concurrence, is that the defendant has a real interest in potentially avoiding a trial and getting the acceptance of responsibility points and everything that comes with, you know, the good favor of having stipulated facts rather than whatever terrible things might come out at trial that might affect them at sentencing. And I get the concern about relegating the Second Amendment if you're treating it differently. So there are those concerns. I don't think I've helped the Court resolve this much. I like to stand up here and try to help the Court fix things in a case, but we're in kind of an odd state of the law. I guess my one last point that I'll just reiterate is the thing that makes this case different is the methamphetamines, and I guess that's a question for the Court to determine if that's a difference maker. So thank you, Your Honor. Thank you, counsel. Ms. Gipley. I want to address the government's point that the case is different simply because this involves methamphetamine. Certainly we acknowledge that many of the Court's cases in this area have related to marijuana. However, I think Cooper makes clear that it says that nothing in our tradition allows disarmament simply because a person belongs to a category of people, drug users, that Congress has categorically deemed dangerous. And so it seems to me that the government is arguing if methamphetamine, a person should be categorically deemed dangerous, and I don't believe that comports with the Supreme Court's standard that they set out in Bruin. And this Court said in Cooper specifically that the Court has to, in the as-applied context, do an individualized assessment and still look to those two historical analogs. But on the other end of the spectrum, I hate to challenge you, but the PCP, we don't see very many functional PCP abusers, where somebody just takes PCP and they're just completely fine, you can't tell they're high or dangerous. What do you do, I mean, couldn't scientific evidence, for example, prove that, like, nobody's going to be functional on this? They're always going to be dangerous or always going to act mentally ill. Couldn't that be a possibility? It could, but I think that in this case it won't be because it's not on this record, but if we look at the DEA scheduling for methamphetamine, it's actually in Schedule 2 versus marijuana, which is in Schedule 1. Schedule 2 controlled substances, yes, it has highly addictive properties, but there is a medically indicative use for it. That's what Schedule 2 means. And, in fact, when you look at the DEA's information on methamphetamine, there is a prescription methamphetamine that's used for treatment of obesity and for ADHD, and interestingly, in this case, we see from the pre-sentence report that Mr. DuBray had, in fact, a prior diagnosis of ADHD. And so I think that's why factual determinations and individualized assessments in this area are going to be important because, as the Court previously noted, there are many cases where we see individuals who have used methamphetamine and are rather functional, working, doing other things in their lives that keep them out of trouble. We sometimes see them eventually come to court, but I don't think in every case methamphetamine equals mentally ill or dangerous or terrorizing the people. And so thank you. Thank you both, counsel, for the opportunity.